## UNITIED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREDRICK M. GAMBLE )
)
Plaintiff, )
)
v. )        Civil Action No. 08-0207 (ESH)
)
DEPARTMENT OF THE ARMY, AND )
ALASKA DEPARTMENT OF MILITARY )
AND VETERANS AFFAIRS )
)
Defendant, )
_____ )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

Pursuant to Local Civil Rule (LCvR) 7(b), this Honorable Court's Order dated May 15, 2008, the undersigned plaintiff, *pro se*, respectfully moves for an order dismissing Defendant's Motion to dismiss or in the alternative, motion for a more definite statement.

In support of this motion, Plaintiff respectfully submits the attached memorandum of points and authorities, a statement of material facts not in genuine dispute, and proposed orders, for which reasons stated therein, this Honorable Court should deny the Motion.

# RECEIVED

JUN 5 - 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Fredrick M. Gamble*

FREDRICK M. GAMBLE
Plaintiff
Regional Confinement Facility
1490 Randolph Road
Fort Sill, OK 73503-5305
Phone Number: (580) 442 - 4313
ATTN: Mrs. RaShonda Labrador

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **FREDRICK M. GAMBLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0207 (ESH)** |
| | ) | |
| **DEPARTMENT OF THE ARMY, AND** | ) | |
| **ALASKA DEPARTMENT OF MILITARY** | ) | |
| **AND VETERANS AFFAIRS** | ) | |
| | ) | |
| **Defendant,** | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION
TO THE MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR A
MORE DEFINITE STATEMENT**

### I. INTRODUCTION

Once the plaintiff exhausted all of his legal and administrative remedies with the U.S. Army in aspects to obtaining relief through "purging actions" for the disclosure of information maintained in a system of records caused by an intentional, reckless, malicious, and tortuous pattern of management" as part of a pattern of retaliation[1] performed by his command, when his command improperly preferred charges based on incompetent, inadmissible, and illegally obtained evidence,[2] before, during, and after his General Courts-Martial (GCM) conviction, the plaintiff In Accordance With (IAW) 5 U.S.C. 552 sought relief through this Honorable Court.

As aforementioned in the plaintiff's original complaint under the Argument

---

1 Henson v. NASA, 14 F. 3d 1143, 1146 (6th Cir. 1994)
2 U.S. v. Asfeld, 30 Military Judge (M.J.) 917 (A.C.M.R. 1990)

1

section pages 16 – 22.  An individual may sue an agency if the agency fails to maintain records with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any agency determination and the agency makes a determination that is adverse to the individual.  An individual may also sue an agency if the agency fails to comply with any other Privacy Act provision in a manner that has an adverse effect on the individual.

An individual may file a lawsuit against any agency in the Federal District Court in which the individual lives, in which the records are situated, or in the District of Columbia.  A lawsuit must be filed within two years from the date on which the basis for the lawsuit arose.

Most individuals require the assistance of an attorney to file a lawsuit.  An individual who files a lawsuit and substantially prevails may be awarded reasonable attorney fees and litigation costs reasonably incurred.  Some requesters may be able to handle their own case without an attorney.

The Privacy Act of 1974 provides safeguards against an invasion of privacy through the misuse of records by Federal agencies.  In general, the act allows a citizen to learn how records are collected, maintained, used, and disseminated by the Federal Government.  The act also permits an individual to gain access to most personal information maintained by Federal agencies and to seek amendment of any inaccurate, incomplete, untimely, or irrelevant information.

The Privacy Act applies to personal information maintained by agencies in the executive branch of the Federal Government.  The executive branch includes cabinet departments, military departments, government corporations,

government controlled corporations, independent regulatory agencies, and other establishments in the executive branch. Agencies subject to the Freedom of Information Act are also subject to the Privacy Act. The Privacy Act does not generally apply to records maintained by State and local governments or private companies or organizations.

In general, the only records subject to the Privacy Act are records that are maintained in a system of records. The idea of a "system of records" is unique to the Privacy Act and requires explanation.

The act defines a "record" to include most personal information maintained by an agency about an individual. A record contains individually identifiable information, including but not limited to information about education, financial transactions, medical history, criminal history, or employment history. A "system of records" is a group of records from which information is actually retrieved by name, Social Security number, or other identifying symbol assigned to an individual.

Some personal information is not kept in a system of records. This information is not subject to the provisions of the Privacy Act, although access may be requested under the FOIA. Most personal information in government files is subject to the Privacy Act.

**A.** The Privacy Act also establishes general records management requirements for Federal agencies. In summary, there are five basic requirements that are most relevant to individuals.

3

1.  Each agency must establish procedures allowing individuals to see and copy records about themselves.  An individual may also seek to amend any information that is not accurate, relevant, timely, or complete.  The rights to inspect and to correct records are the most important provisions of the Privacy Act.

2.  Each agency must publish notices describing all systems of records.  The notices include a complete description of personal data recordkeeping policies, practices, and systems.  This requirement prevents the maintenance of secret record systems.

3.  Each agency must make reasonable efforts to maintain accurate, relevant, timely, and complete records about individuals.  Agencies are prohibited from maintaining information about how individuals exercise rights guaranteed by the first amendment to the U.S. Constitution unless maintenance of the information is specifically authorized by statue or by the individual or relates to an authorized law enforcement activity.

4.  The act establishes rules governing the use and disclosure of personal information.  The act specifies that information collected for one purpose may not be used for another purpose without notice to or the consent of the subject of the record.  The act also requires that each agency keep a record of some disclosures of personal information.

5.  The act provides legal remedies that permit an individual to seek enforcement of the rights granted under the act.  In addition, Federal employees

who fail to comply with the act's provisions may be subjected to criminal penalties.

## II. Facts

The plaintiff repeats and re-alleges the allegations in the Facts section of his Privacy Act complaint Case Number 1:08-cv-207 dated February 5, 2008 and TAB A of that document. All other facts necessary for this memorandum in oppositions to the defendant's motion to dismiss have been previously submitted to this Honorable Court or are found in argument.

The Alaska Army National Guard (AK ARNG) has the exact same personnel record system as the Department of the Army (DA), yet never presented the defective record from a 1994 investigation to the plaintiff during one of its record keeping policies, practices, and systems, in order for the plaintiff to inspect and to correct the information contained in the defective record in question. Thus, since the DMVA[3] "found" the record upon communicated request of the DA, and the AK ARNG's G1 is its custodian, the DMVA maintained a secret record system. Moreover, this disclosure was the proximate cause of the defendant making an adverse determination against the plaintiff in the form of an Army Regulation (AR) 15 – 6 investigation, which forms the basis for the U.S. v. Gamble, 2008 CAAF LEXIS 216 (Feb. 19, 2008) case.

On the 2nd – 7th of August 2006, the defendant demonstrated acknowledgment of its due care responsibilities owed to the plaintiff based on the

---

3  When the reference stipulates as a whole, the SOA, the AK ARNG, and the AK MYA, it will hereto be referred to as the Department of Military and Veterans Affairs (DMVA)

AR 15 – 6 Investigating Officer (IO) signing as the person administering the Privacy Act oath to every witness called during the AR 15 – 6 investigation, who in turn signed the Privacy Act Statement, which shows that the witnesses read or have had read to them the Privacy Act Statement pursuant to 10 U.S.C. 3013 and AR 15 – 6.  Furthermore, it declares that the witnesses fully understood the contents of their entire statement.

On the 4th and 6th of August 2006, several DA personnel intentionally/willfully swore to disclosed private information from a defective record maintained in a secret record system, against the plaintiff in an AR 15 – 6 Investigation at Kandahar Air Field (KAF), Afghanistan.  Thus, making the disclosed private information part of the DAs system of records as it became allied paperwork to the plaintiff's Record of Trial (ROT) IAW R.C.M. 1105.

On September 21, 2006 personnel from the DMVA, and the public in Alaska who were not acting in their official capacity, nor ever had a right to know such information, whom the U.S. Army had no jurisdiction over, and who were not on the defendant's witness list, made official sworn statements against the plaintiff, thus, showing that the defendant provided the public access to information contained in records in the possession or control of the federal government which release jeopardized the constitutional rights of the plaintiff during an ongoing legal proceeding in violation of the FOIA of 1964.

On September 27, 2006 the DMVA willfully disclosed a defective record contained in a secret record system to the DA via any communicated request reference the plaintiff.

On November 14, 2006 the DA submitted into evidence charges derived from the defective record received from the DMVA in <u>Gamble</u>.

On February 5, 2008 the plaintiff sought legal remedies through this Honorable Court for injuries sustained from the defendant's negligence, by filing an Intentional/Willful Standard and Actual Damages in Accuracy and Other Damages Lawsuit against the DA, et al., defendants,[4] based on their disclosing any record which is contained in a "system of records" in violation of the Privacy Act of 1974.

On April 14, 2008 the State of Alaska (SOA), Office of the Attorney General filed a limited entry of appearance on behalf of the SOA, the AK ARNG and the AK MYA seeking dismissal from the plaintiff's claims against the AK ARNG and the AK MYA arising from their role as agencies or departments of the SOA. This motion asserted that the National Guard (NG) is a hybrid organization that serves both the state in which it is located and the federal government in times of need. Their appearance was to the extent that the plaintiff's claims arise from the AK ARNG and the AK MYA's actions as agencies of the SOA, and sought dismissal of the claims against them, based on the Eleventh Amendment to the U.S. Constitution, which prevents the plaintiff from bringing these claims in federal court. Therefore, they allege that this Honorable Court lacks jurisdiction over these claims and as such the claims against the DMVA must be dismissed.

On April 25, 2008 the plaintiff filed a Motion for Summary Judgment[5] against

---

4  See Complaint filed as Civil Action 08-207 (ESH)
5  See Motion For Summary Judgment Reference Civil Action 08-0207 (ESH)

the Defendant which contained an amendment to his Complaint, and sought legal remedies through this Honorable Court for injuries sustained from the defendant's negligence, by filing an additional lawsuit for the defendant's Providing the Public Access to Information Contained in Records in the Possession or Control of the Federal Government which Release Jeopardized the Constitutional Rights of the Plaintiff during an Ongoing Legal Proceeding in Violation of the FOIA of 1964, and IAW FRCP Rule 42.

On May 7, 2008 in-conjunction with the aforementioned motion filed by the DMVA, the plaintiff submitted a Writ of Habeas Corpus to this Honorable Court requesting a collateral review of his GCM, a reversal to his GCM conviction based on the substantial violation of the plaintiff's Constitutional rights, the defendant's lack of jurisdiction which denied him a fair trial, and the exceptional circumstances which are so fundamentally defective as to result in a miscarriage of justice.  In addition to, receiving relief, and the plaintiff's immediate release from incarceration without having to deal with any adverse actions adjudged to him by his GCM sentence as he awaits the final actions to be taken by this Honorable Court in reversing his GCM conviction.

On May 14, 2008 the DA filed a motion to dismiss, or in the alternative, motion for a more definite statement, which only addressed claims against the U.S. Army and the other named defendants to the extent they are in a federal status and are acting as part of the U.S. Army.  Furthermore, to the extent the Court accepted the plaintiff's summary judgment motion; defendant requested that their motion be deemed an opposition to plaintiff's summary judgment motion as well.

8

The plaintiff has made a claim for a trial by jury on all matters pertaining to this action.

### III. Opposing Points and Authorities

**A. The defendant claims pursuant to FRCP 12(b)(1), that the plaintiff fails to meet his burden of establishing subject matter jurisdiction by a preponderance of the evidence.**

**1. Defendant's Claim:** The defendant claims that it is well established that the U.S. cannot be sued without its consent. "[A] sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." U.S. v. Mitchell, 445 U.S. 535, 538 (1980) (citation omitted); U.S. v. Testan, 424 U.S. 392, 399 (1975); U.S. v. Sherwood, 312 U.S. 584, 586 (1941). Only Congress can waive the sovereign immunity of the United States. Block v. North Dakota, 461 U.S. 273 (1983). These waivers or sovereign immunity are strictly construed, cannot be implied, and must be unequivocally expressed. Library of Congress v. Shaw, 478 U.S. 310 (1986); U.S. v. Mitchell, 445 U.S. 535, 538 (1980); McMahon v. U.S., 342 U.S. 25 (1951). In addition, such statutory waivers "are to be construed strictly in favor of the sovereign." McMahon v. U.S., 342 U.S. 25, 27 (1951) (footnote omitted). Thus, the defendant claims pursuant to FRCP 12(b)(1), that the plaintiff fails to meet his burden of establishing subject matter jurisdiction by a preponderance of the evidence.

**2. Plaintiff's Claim:** The plaintiff opposes this claim based on the following opposing points and authorities:

9

**a. Federal Question Jurisdiction:** Under a Federal Question Jurisdiction case, there is not an adequate definition in a case "arising under" the Constitution, etc., that exists. The one that is most generally accepted is that the suit must be on "a substantial claim founded 'directly' upon federal law." The Supreme Court has formulated a somewhat more specific set of tests: In order for a federal question to exist, it must be the case "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." See Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 U.S. 1 (1983).

In a vast majority of federal-question cases, federal law will be the source of the cause of action. For instance, a claim for Privacy Act violations clearly presents a federal question, because a federal statute (5 U.S.C. 552) is the source of the right the plaintiff is asserting. Thus, if the plaintiff's cause of action derives from federal law, the case necessarily is one falling within the federal-question jurisdiction.

**b. Supplemental Jurisdiction:** Supplemental jurisdiction, codified in 28 U.S.C. 1367, provides that in cases where "the district courts have original jurisdiction [over a federal question], the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III. ..." Supplemental jurisdiction applies to additional claims between the same two parties, as well as to "pendent parties" (third parties brought into the suit under the federal court's jurisdiction), provided that

10

both claims derive from a common nucleus of operative fact (a requirement implied by the statute's reference to "Article III case or controversy.")

The plaintiff concedes that a federal court would not ordinarily have jurisdiction over a "state entity" under an Eleventh Amendment claim, because that claim apparently does not present a federal question, and there is no diversity between the parties.  However, since a Privacy Act claim under 5 U.S.C. 552 does present a federal question, and since the "system of records" practices that are being relied on by the defendant to support that federal claim are the same as the "system of records" practices that are alleged to violate the state statute, it would present a federal question.  e.g. a Title 32 NG unit which "is a hybrid organization that serves both the state in which it is located and the federal government in times of need" is required by the DA as one of it's agencies to maintain the same exact system of records as a Title 10 Regular Army unit, therefore, under the Privacy Act the defendant's so called "state entity" has an established general records management requirement.  Moreover, the plaintiff's claims derive from a "common nucleus of operative fact," and the plaintiff would ordinarily be expected to try them all in one suit.  The federal court is still free to use its discretion under 1367(c) to decline to hear the state-law claim, but on these facts it probably would hear the claim since considerations of judicial economy and convenience militate in favor of hearing both claims. Finally, since the "core" (basic) claim in the plaintiff's fact pattern involves a federal question under 5 U.S.C. 552, supplemental jurisdiction allows the plaintiff if he so chooses to add state-law claims such a 42 U.S.C. 1983 to his suit.  Thus,

11

the plaintiff can assert both a federal-statutory claim and a state-law (perhaps common-law) claim, since there is not diversity between plaintiff and defendant.

### c. FRCP 12(b)(1) – Lack of Subject Matter Jurisdiction

**Argument:**  In <u>Feres</u>[6], the U.S. Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise of or are in the course of activity incident to service." <u>Cummings</u>[7] argued that this doctrine should not be extended to suits against government agencies under the Privacy Act, and this Honorable Court ruled in her favor on February 15, 2002.  Thus, in determining whether members of the Armed Forces may sue the military for damages under the Privacy Act, we start with the "cardinal" canon of statutory construction:  "Courts must presume that [the Congress] says in a statute what it means and means in a statute what it says there." <u>Conn.Nataional Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992) (citations omitted).  "When the words of a statute are unambiguous, then, this first canon is also the last:  'judicial inquiry is complete.'" Id. At 254 (quoting <u>Rubin v. U.S.</u>, 449 U.S. 424, 430 (1981)).  With these precepts in mind, the plaintiff turns to the text of the Privacy Act.

As the district court recognized, the Privacy act "applies to 'agencies,' defined as 'any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government … or any independent regulatory agency.'"

---

6 <u>Feres v. U.S.</u>, 340 U.S. 135 (1950)
7 <u>Cummings v. Department of the Navy</u>, 116 F. Supp. 2d 76, 78 – 82 (D.D.C. 2000)

Cummings, 116 f. Supp. 2d at 78 n.5 (quoting 5 U.S.C. 552(f)) (emphasis added).  And as the trial court further observed, certain provisions of the Act manifest congressional intent to protect uniformed personnel like Cummings. See id. At 78 n.5, 81 (citing 5 U.S.C. 552(f), 552a(g)(1), 552a(k)(5) and 552a(k)(7)).  One provision permits agencies, in certain circumstances, to exempt from the Act's purview "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for … military service…." 5 U.S.C. 552a(k)(5).  Another allows exemption—again, in limited circumstances—of "evaluation material used to determine potential for promotion in the Armed Services…." 5 U.S.C. 552a(k)(7).  The District Court rightly noted that such exemptions "would be unnecessary if military service persons were excluded from the Privacy Act altogether." Cumming 116 F. Supp. 2d at 78 n.5.

The court concluded that the aforementioned provisions, taken together, demonstrate that the Congress unambiguously intended to establish a duty that runs from a "military department" (like the Navy) to military personnel (like Cummings) not to "disclose any record which is contained in a system of records" (like Cumming's Evaluation Board report).  5 U.S.C. 552a(b).  The Navy did not contest this.  Instead, it contended that "without necessarily waiving immunity with respect to money damages," the Congress "intended to apply the Act to 'military departments'" by permitting a service member to seek equitable remedies only.  Br. Of Appellee at 25.  Its contention finds no support in the text of the statute; without regard to the identity of the plaintiff or the agency she is suing, the Act plainly authorizes injunctive relief, 5 U.S.C. 552a(g)(2)(A), (3)(A),

and monetary relief, 5 U.S.C. 552a(g)(4),[8] and it permits a court to "assess against the U.S. reasonable attorney fees and other litigation costs," 5 U.S.C. 552a(g)(2)(B), (3)(B).  Moreover, that the Act allows a military department to exempt from the Act's reach certain records based upon their content, 5 U.S.C. 552a(k)(5), (7), demonstrates that the Congress did not intend the courts to craft additional exemptions from coverage based upon the type of relief a service woman requests (i.e., by limiting suits to equitable relief only).  See Fawn Mining Corp. v. Hudson, 80 F.3d 519, 523 (D.C. Cir. 1996) ("Neither lawyers nor judges serve as back-seat lawmakers who may extend statues beyond their bounds or change the rules that Congress has set.").

The district court correctly reminded us that "waivers of sovereign immunity must be unequivocally expressed and narrowly construed," Cummings, 116 F. Supp. 2d at 81 (quoting Dorsey v. Department of Labor, 41 F. 3d 1551, 1555 (D.C. Cir. 19964)).  Erroneously, however, it denied effect to the unequivocally expressed waiver contained in the Privacy Act, 5 U.S.C. 552a(g).  Construing a waiver of sovereign immunity narrowly, even "strictly in favor of the sovereign," means only that a court may not "enlarge the waiver beyond what the language requires."  Tomasello v. Rubin, 167 F. 3d 612, 618 (D.C. Cir. 1999) (quoting U.S. v. Nordic Village, Inc., 503 U.S. 30, 34 (1992)).  We need not "enlarge" by any stretch the Privacy Act's purview in order for the statute to avoid the effects of the

---

8 Section 552a(g)(4) provides:

> In any suit brought under the provisions of … this [Act] in which the court determines that
> the agency acted in a manner which was intentional or willful, the U.S. shall be liable to
> the individual in an amount equal to the sum of … actual damages sustained by the individual
> … and … the costs of the action together with reasonable attorney fees as determined by the court.

Feres doctrine.  As the district court acknowledged," on its face, the Privacy Act would appear to permit actions brought by military personnel….: Cummings, 116 F. Supp. 2d at 81.  And statutory text remains the best evidence of congressional intent.  See Tataranowicz v. Sullivan, 959 F.2d 268, 276 (D.C. Cir. 1992).  The Act not only appears to, but does, permit actions brought by military personnel. Therefore, the defendant's claim of sovereign immunity citing Mitchell, in addition to, all of the other cited authorities have been waived by Congress under 5 U.S.C. 552.

Additionally, the DMVA's claim that the plaintiff "does not assert, nor can he allege, any set of facts indicating that the SOA's immunity from such a suit has been waived or abrogated"[9] by pointing to any authority indicating that Congress has manifested an unequivocal intent to abrogate state sovereign immunity for the claims he brings in his complaint,[10] making the Eleventh Amendment a complete bar to the plaintiff's claims are also unwarranted, based on their established role as a federal agency under the DA with a general records management requirement under 5 U.S.C. 552.

   With the aforementioned legal precepts in mind to prove subject matter jurisdiction, the plaintiff's reliance on the text of the Privacy Act clearly reveals that Congress unambiguously intended to establish a duty that runs from a "military department" e.g. the DA and the DMVA, to military personnel e.g. the plaintiff, not to "disclose any record which is contained in a system of records"

---

9  Port Authority, 495 U.S. at 305-07; Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-66 (1989)
10  Indeed, the plaintiff appears to presume that the AK ARNG and AK MYA are entirely federal agencies. See Docket No. 1, Supplement to Petition for Grant of Review at 16-17.

e.g. the DA and the DMVA's disclosure of any record on the plaintiff contained in a system of records which violated 5 U.S.C. 552a(b). Furthermore, Congress did not intend the courts to craft additional exemptions from coverage based upon the type of relief from a serviceman's requests i.e., by limiting suits to equitable relief only.

Additionally, specific concerns presented in the context of an intra-military lawsuits, in general "waivers of sovereign immunity must be unequivocally expressed" and narrowly construed. Dorsey v. Dep't of Labor, 309 U.S. App. D.C. 396, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (quoting Irvin v. Dep't of Veterans Affairs, 498 U.S. 89, 95, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990). In this case, Congress waived sovereign immunity to make the "military departments" subject to the Privacy Act, but that waiver must be narrowly construed. The Feres doctrine will apply to the Privacy Act unless the concerns which gave rise to the ruling in Feres are simply not presented by the causes of action which Congress established. Therefore, the statutory text remains the best evidence of congressional intent, and thus, as previously argued in the plaintiff's complaint under 5 U.S.C. 552, and now as the plaintiff further asserts, alleges, and offers as opposing points and authorities IAW Local Rule (LCvR) 7(b), the plaintiff pursuant to FRCP 12(b)(1), undeniably meet his burden of establishing subject matter jurisdiction by a preponderance of the evidence.

**B. The Defendant Claims Pursuant to FRCP 12(b)(6), That the Plaintiff Fails to State a Claim Upon Which Relief can be granted.**

**1. Defendant's Claim:**

16

**a.** The defendant notes in document 11 page 3 section I "in the alternative, Plaintiff's complaint fails to comply with FRCP 8(a) and this Court should order him to file a more definite statement."

**b.** The defendant cites <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also In re Sealed Case</u>, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing <u>Twombly</u>); that the plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."

**2. Plaintiff's Claim:**  The plaintiff opposes this claim based on the following opposing points and authorities:

**a. <u>Elements of Complaint:</u>**  Although not so ordered by this Honorable Court, to make a more definite statement pursuant to the defendant's FRCP Rule 12(e) request, the plaintiff's more definite statement on the elements of his submitted Complaints are as follows:

**(1) Jurisdiction:**  This Honorable Court has Federal Question, Supplemental, Collateral Review, Privacy Act and the FOIA jurisdiction and authority in this case over all liable parties.

**(2) Statement of Claim:**  The plaintiff alleges the defendant disclosed any record which is contained in a system of records in violation of Privacy Act of 1974 and the Freedom of Information Act of 1964.

**(3) Relief:**  The plaintiff's demand for judgment for the relief which he deems himself entitled is as follows:

      **(a)** Compensatory Damages -  In the amount of $10,000,000 in order to make the plaintiff "whole" for the damages he has suffered as the result of the defendant's Privacy Act disclosure violation IAW 5 U.S.C. 552a(g)(4).  In addition to receiving an additional $10,000,000 for the actual damages sustained by the defendant's FOIA disclosure violation IAW 5 U.S.C. 552a subsection (g)(1)(c).  Thus, the plaintiff requests to receive the total compensatory damages of $20,000,000 IAW 5 U.S.C. 552a for the actual damages sustained by the defendant's disclosure as outlined in the plaintiff's supplement to petition.  e.g. earnings and earning capacity; loss of enjoyment of life; a public disclosure of private facts; a publication placing plaintiff in a "false light"; claim for loss of consortium with the plaintiff's spouse; and negligent infliction of emotional distress.

      **(b)** Punitive Damages - In the amount of $65,000,000 in order to "punish" the defendant for extreme wrongdoing by disclosing any record in violation of the Privacy Act.  In addition to, receiving and additional $65,000,000 in punitive damages in order to "punish" the defendant for extreme wrongdoing by disclosing any record in violation of the FOIA.  Thus, the plaintiff requests to receive the total punitive damages of $130,000,000 for the defendant's egregious wrongdoing of disclosing information in violation of the Privacy and FOIAs from May 1994 to present.

      **(c)** Reasonable Attorney Fees and Other Litigation Costs IAW 5 U.S.C. s 552a(g)(2)(B), (3)(B).

**(d)**  Injunctive Relief - By ordering the defendant to stop its unlawful actions of publically disclosing private facts, and producing a publication placing the plaintiff in a "false light," IAW 5 U.S.C. 552a(g)(2)(A), (3)(A).

**(e)**  Mandamus Relief - Order the defendant to provide Mandamus relief of correcting the plaintiff's military records by removing the plaintiff's flagging actions and promoting him according to his original Presidential Promotion List 10 – 06, reinstating/renewing his Top Secret Security Clearance, restoring all lost leave that he would have received, and expunging his military record e.g. Relief For Cause OER, ROT, DNA and related FBI Criminal File documents, and all U.C.M.J. actions as they apply to Articles 69, 71, 75, 76 and any other Articles and actions that would completely purge all taint from the plaintiff's record associated with the disclosure.

The Privacy Act has its own provisions and set of laws that governs it; hence, Writs of Mandamus are not submitted.  Thus, the plaintiff will not submit a Writ of Mandamus due to the remedy to empower this Honorable Court to order U.S. officers and employees to perform duties owed the petitioner, e.g., change military records IAW 10 U.S.C. 1552 (1994) if a mistake has been made in completing the records, was already granted through 5 U.S.C. 552, therefore, that request was made in the plaintiff's original complaint.

**(f) Special Matters** – Special relief under special matters IAW FRCP Rule 9(b) for circumstances giving rise to any allegation of fraud or mistake, which the plaintiff submitted a Writ of Habeas

Corpus to this Honorable Court on May 7, 2008 requesting a collateral review of his GCM, a reversal to his GCM conviction, due to substantial violations of the plaintiff's constitutional rights, the defendant's lack of jurisdiction during the GCM, and the exceptional circumstances which are so fundamentally defective as to result in a miscarriage of justice; in addition to, granting all the relief sought on pages 10 – 12 of that petition to include the plaintiff's immediate release from incarceration based on 28 U.S.C. 2255 which allows convicted service members to seek immediate release from the "custody" of the Armed Forces through a petition for habeas corpus in Federal district courts.  The service member does not necessarily have to be in actual confinement or restraint.  In determining whether the petitioner is in unlawful custody, the federal courts will collaterally review the Court-Martial (CM) and may consider arguments that the CM was without jurisdiction, that due process was lacking, or that the trial did not afford all the procedural safeguards necessary for a fair trial under military law.

        **(g)**  In the Alternative - Grant a partial summary judgment to the plaintiff and award him the following relief:

        **1.**  Compensatory damages in the total amount of $15,000,000 ($7,500,000 for each Complaint).

        **2.**  Punitive damages in the total amount of $60,000,000 ($30,000,000 for each Complaint).

        **3.** The aforementioned Reasonable Attorney Fees and Other Litigation Costs.

        **4.** The aforementioned Injunctive Relief

**5.** The aforementioned Mandamus Relief.

**6.** The aforementioned Special Matters.

**b. FRCP 12(b)(6) – Plaintiff Fails to State a Claim Upon Which Relief can be granted Argument:** A complaint should not be dismissed for "failure to state a claim on which relief may be granted" (Rule 12(b)(6)) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1957). The plaintiff asserts that pleading under the codes was/is designed to reveal the underlying facts on which the claim is raised. Therefore, the plaintiff has proven sets of facts with his Complaints, Writ of Habeas Corpus, and allied paperwork e.g. TABs A, B, and C, which were submitted to this Honorable Court that prove his set of facts in support his claim and entitle him to relief.

Similarly, the plaintiff in his original complaint was not required to recite facts that sufficiently demonstrate a prima facie case,[11] that is, as long as the plaintiff gave enough facts to put the defendant on reasonable notice about what was being alleged, it's irrelevant that the plaintiff had failed to allege some matters that he would ultimately have to prove in order to recover. Moreover, the plaintiff alleged on page 123 of his original complaint under the Relief Sought section that "IAW the Privacy Act of 1974 the plaintiff is suing the defendant for the releasing of personal information maintained by these agencies."[12]

_____

11 A prima facie case consists of all the facts which the plaintiff must prove in order to be entitled to have the case decided by the jury rather than dismissed by the judge on a motion for summary judgment or for a directed verdict.
12 These agencies refers to The U.S. Army, The Alaska Army National Guard (AK ARNG), and the Alaska Military Youth Academy (AK MYA) hereto referred to as the defendant.

Under established law, if the plaintiff wants to prove his case by circumstantial rather than direct evidence, plaintiff will have to at trial meet his burden of proof and standard of proof as outlined under 5 U.S.C. 552a subsection (g)(1)(C):

        **(1)**  The plaintiff has the burden of proving that:

                **(a)**  a defective record

                **(b)**  proximately caused

                **(c)**  an adverse determination concerning him

        **(2)**  Furthermore, in order to obtain relief under the Privacy Act the plaintiff must establish that:

                **(a)**  the agency violated a provision of the Act

                **(b)**  the violation of the Act was "intentional or willful"

                **(c)**  this action had an adverse effect on the plaintiff

and that if these three factors are satisfied, the plaintiff is entitled to the greater of $1,000 or the actual damages sustained.

        **(3)**  Proof of actual damages is required in order to recover either the statutory minimum or damages beyond the minimum, then actual damages sustained by the plaintiff are recoverable, but in no case shall a person who is entitled to recovery receive less than the sum of $1,000.  Moreover, as mentioned in the plaintiff's Complaint under A Defective Record Proximately Caused an Adverse Determination on page 24 "the egregious acts of Unlawful Command Influence (UCI) in the plaintiff's case will prove how violations of the Privacy Act of 1974 were the proximate cause of the adverse determination upon the plaintiff.  Furthermore, these egregious acts will show how the defendant

violated a provision of the Act, violated the Act intentionally or willfully, and how this action had an adverse effect on the plaintiff." Thus, all allegations stated in the plaintiff's Complaint and allied paperwork sought to meet his burden of proof under the requirements of 5 U.S.C. 552a subsection (g)(1)(C) by showing how these negligent acts were intentional/willful and not mere "unnecessary inclusions or allegations regarding the Plaintiff's Court Martial (CM) which will only serve to confuse all parties if the defendant's motion to dismiss if not granted."

    As aforementioned the district court acknowledged," on its face, the Privacy Act would appear to permit actions brought by military personnel....: <u>Cummings</u>, 116 F. Supp. 2d at 81. And statutory text remains the best evidence of congressional intent. See <u>Tataranowicz v. Sullivan</u>, 959 F.2d 268, 276 (D.C. Cir. 1992). Thus, contrary to the defendant's claim, the Act not only appears to, but does, permit actions to be brought by the plaintiff, and the Act does provide the granting of relief. Furthermore, the plaintiff in this motion has provided for the defendant a more definite statement that will allow the defendant the opportunity to frame a responsive pleading in this case. Moreover, through his Complaints and its allied paperwork submitted to this Honorable Court the plaintiff asserts that he has provided "enough facts to state a claim for relief that is plausible on its face" under 5 U.S.C. 552.

    The evidence contained in the Complaints and its allied paperwork demonstrates how the DMVA failed in their due care responsibilities owed to the plaintiff when it disclosed a secret defective record contained in a secret record

system, to the DA upon any communicated request reference the plaintiff.

Moreover, it demonstrates how both DMVA and the DA failed in their due care

responsibilities owed the plaintiff when they both disclosed information from a

record contained in a system of records by any means of communication to the

public[13] who did not have a need to know, except pursuant to a written request

by, or with the prior written consent of, the plaintiff to whom the record pertained.

Hence, all matters dealing with the plaintiff's claim of Privacy Act and FOIA

Violations, and a collateral review of his GCM have been filed with this Honorable

Court, and all points are relevant as all claims seeking the granting of relief are

within the aspects of their specific statue.  Moreover, the plaintiff asserts that the

Court for Privacy Act and FOIA violations should look to the more immediate

cause of the injury, which is the release of the plaintiff's record.  Thus, the

plaintiff's position would be correct due to the fact that the release of the record,

not the creation or existence of the record, creates a cause of action under the

Privacy Act.

Creating and maintaining the record is certainly military conduct, but all

Privacy Act cases raised against the military will necessarily involve a record

from a military "system of records"  See 5 U.S.C. 552a(a)(5).  If this Court were to

employ the defendant's approach, any action for damages under the Privacy Act

would be considered "gross negligence" or simply waived by sovereign immunity

by virtue of the fact that a military record formed the basis for the action.  Instead,

---

13  defined to include "not only the civilian population, but also the rank and file of the services because most service members are not directly involved with the military criminal justice system." U.S. v. Allen, 31 M.J. 572 (N.M.C.M.R. 1990)

the plaintiff asserts this Honorable Court to focus his Complaints on the following: whether or not the release of his record was, in itself, intentional/willful; if providing the public access to the information contained in any record in the possession or control of the defendant, who then incompetently and illegally released inadmissible evidence to the public, would jeopardize the constitutional rights of the Plaintiff during an ongoing legal proceeding; and if the evidence provided of such acts substantiates enough factual basis for granting the plaintiff relief from the defendant's various violations of 5 U.S.C. 552.

The plaintiff's case is reliant on the premise that a fact-finder could infer from the defendant's control and custody of his record that Army personnel released his record. As Cummings put it, "this case is about the unilateral release of confidential and private documents by Army personnel." That release was a military decision, regardless of how unlikely or outrageous the decision might appear to a casual observer. Military personnel by the reasonable person standard are considered to be professional, and thus, held at a higher standard than a normal person. Moreover, these professionals are aware by training and experience that private information should not be provided to individuals who were not authorized access to such information. U.S. v. Sheperd, (C.C.A. LEXIS 189, 2002). When properly reviewed the evidence on its face value under 5 U.S.C. 552 clearly demonstrates that the defendant performs information functions and had access to sensitive personnel information which was protected from disclosure by 5 U.S.C. 552. In addition, in Henson, involving employee's claim that superior released confidential medical information, "intentionally or

25

negligently inflicted severe emotional distress … and engaged in an intentional, reckless, malicious, and tortuous pattern of abusive management" as part of a pattern of retaliation. Therefore, as aforementioned on page 123 of his original complaint the plaintiff "asserts that such a pattern is found in the plaintiff's case through the numerous egregious acts of UCI, in which performing, the defendant's conduct violated a Provision of the Act, that caused an adverse determination against the plaintiff, that rose out of these Intentional or Willful violations of the Privacy act, that still adversely effect and impact the plaintiff."

The plaintiff also argues just as Cummings did that the release of his record could not have been a discretionary military decision based on the following points named by the defendant:  a state entity; intra-agency inquiry; injuries sustained that are not the proximate result of the adverse determination against the plaintiff; not maintained in a system of records; and based on gross negligence as cited in various places in the defendant's motion to dismiss.  The plaintiff claims this because such a release would clearly not be permitted under the Privacy and FOIAs or by military regulation.

Through the plaintiff's production of evidence, the plaintiff has proven that the defendant's actions which violated 5 U.S.C. 552 resulted in a breach of duty, and once it is shown that the defendant owed a duty of due care to the plaintiff, the plaintiff must then show that the defendant breached this duty through an act or omission exposing others to an unreasonable risk of harm.  These three elements – i.e., an act or omission by the defendant, a duty of due care owed to the plaintiff, and a breach of duty by creation of an unreasonable risk of harm –

together constitute a "negligent act." However, the elements of causation and damages must also be satisfied in order to establish liability for the negligent act, and the plaintiff's asserts that he has satisfied this requirement.

**(4)** Whether the defendant has breached a duty of due care requires a two-step demonstration:

**(a)** First, prove what actually happened, which the plaintiff attests he has done, e.g. with the omission by the defendant that the defendant did indeed intentionally/willingly disclose a defective record which is contained in a "system of records" that violated 5 U.S.C. 552. The plaintiff asserts that there is no "genuine issue of material fact," as he meet his burden of production by submitting as evidence a memorandum from LTC Bailar the Alaska National Guard's Staff Judge Advocate, that showed by the DMVA's own admittances that they indeed violated various provisions of the Privacy and FOIAs, as the defendant's claimed to perform the custodial duties, and were even the attestation authority of a defective record concerning a 1994 investigation on the plaintiff which was incomplete. Furthermore, without the plaintiff's approval the DMVA improperly disclosed this file to the DA, upon the DA's prosecutor's request.

**(b)** Secondly, the plaintiff has to show that the defendant acted unreasonably under those circumstances, which the plaintiff has also shown with the numerous amount of unreasonable actions demonstrated by the defendant's in how they violated their "duty owed" responsibilities to the

plaintiff in relation to 5 U.S.C. 552 with relation to performing "discretionary,"
and/or "ministerial" functions, in addition to, the militaries "Materiality Standard."

    **1.** Discretionary functions are those in which
the officer has some element of personal judgment or decision making.  In
carrying these functions, the officer is granted immunity as long as they were
acting in good faith, which the plaintiff has proven with the burden of production
that the defendant's personnel were negligent, thus, they did not act in good
faith.

    **2.** Ministerial functions are those in which the
officer is left no choice of their own; they are carrying out orders of others or
established duties of their office.  Here there is no immunity.  If the officer
negligently fails to perform their required duties properly, they can be held
personally liable for any damages resulting from their acts, even if they were
acting in good faith. Which again the plaintiff through the burden of production
has proven that third parties from the defendant did not act in good faith, but in
negligence, hence, they are liable.

    **3.** Finally, as aforementioned in the plaintiff's
original complaint on page 64 cited in <u>Hart</u>,[14] the court analyzed Supreme Court
and military precedent and concluded that in the military the following
"materiality" standards apply as follows:  Prosecution use of perjured testimony
or similar misconduct will result in reversal unless it is harmless error beyond a
reasonable doubt, regardless of whether the prosecution acted in good faith.

_____

14 <u>U.S. v. Hart</u>, 27 M.J. 839 (A.C.M.R. 1989)

The defendant's unreasonable actions resulted in the plaintiff having to file several Motions to Suppress the disclosed information prior to his GCM based on the damages caused by the defendant's breach of law with the defective record in question.  Furthermore, contrary to the defendant's claim in his Motion (document 11 page 6 of 18) that the "plaintiff admits that the information from the "secret file" was suppressed upon his defense counsel's motion during his CM. Document 1 at 4, 20.  This claim by the defendant clearly fails to grasps the true validity of the plaintiff's actual statement which was "in an attempt to suppress this, intentional/willful act by the agencies the plaintiff was forced to hirer a civilian lawyer (for circa $50,000) in order to suppress this inaccurate, non-relevant, and untimely information in court in NOV 2006 through a Motion to Suppress.  However, although the Motion was upheld by the MJ the intentional/willful act by the agencies still resulted in the releasing of personal information maintained by these agencies that contained specific details and direct quotes from an inaccurate, non-relevant, untimely, and non-complete secret file, that as a direct result of the violations of Privacy caused the plaintiff severe damage," all combined these actions show how the defendant did indeed act unreasonably under the circumstances.

   **(5)**  The defendant's negligent act must be the cause of the plaintiff's injuries in order to impose liability.  This involves two separate determinations:

    **(a)**  First, whether the defendant's conduct was the actual cause (or cause in fact) of the injuries.  In order to prove this the plaintiff

cites from his original complaint on page 85 that "MAJ Luce makes the statement in his interview with the IO 6 AUG 2006 that he knew of a sexual harassment investigation back in Alaska" against the Plaintiff, and MAJ Veith is further credited with making the following statement "flirting with females is a "Fredism" and that he had a sexual harassment charge in Alaska.  MAJ Veith makes that statement based on the IOs question of do you have any other information pertaining to this matter, or would you like to make any other statements?  Please write any other information you would like to provide.  Therefore, MAJ Veith made a statement that clearly shows the defendant violated the Privacy and the FOIAs with their negligence in the administration, supervision, and subsequent monitoring of the Act by disclosing information."

The disclosure of information reference the plaintiff from a case 12 years prior to that point was in a defective record maintained by the defendant and kept secret from the plaintiff as it was not made available to the plaintiff per the agencies established procedure allowing individuals to see and copy records about themselves.  Therefore, the plaintiff who would have sought to amend information in the record that was not accurate, relevant, timely, or complete, was denied that right to inspect and to correct the record.  Moreover, the information in that record was not even in the plaintiffs personnel file, and is also incomplete as the government was unable to turn up the EEO investigation in that case, yet it is still protected by a privacy statute.  Moreover, 12 years after the fact in a sworn statement made by several of the defendant's witnesses, in an unrelated

case against the plaintiff, it is maliciously used as a damaging statement against the plaintiff in an ongoing investigation.

MAJ Veith made this statement as a matter of fact to describe the plaintiffs so called "Fredisms" or behavior, and that indeed he had been charged as a sexual harasser in Alaska. This libelous statement clearly violates the Privacy Act which by law requires the defendant to perform information management functions and who are responsible in providing the due care responsibilities of the plaintiff's record, by only providing access to this private information to those acting in an official capacity. Yet, multiple defense witnesses who have never had a right to know such information, and who were not acting in their official capacity swear to disclosed defective information from a record in a system of records as facts in an ongoing investigation 12 years after the unrelated incident. Moreover, the unrelated, uncharged and un-sworn allegations in the defective record do not even meet the legal propensity evidence standards of the Army, yet are not only introduced into the AR 15 – 6 investigation as true, but then are intentionally circulated around the plaintiffs organization at KAF, Alaska, and a unit deployed to Mississippi as what the MJ at the Bagram Air Field (BAF) Motions to Dismiss Trial in January 2007 called "rumors" that depict the plaintiff to the witness pool as the defendant's pattern of retaliation wanted him to be depicted as, "a predator, a psychological predator, and a bad guy who needed to go down."

These rumors were being talked about in public settings and in private settings, and provided the public access to information contained in records in the possession or control of the defendant which release jeopardized the

31

constitutional rights of the plaintiff during an ongoing legal proceeding.  This shows that the taint of disclosed information from a defective record was never purged out of the plaintiff's case.  The damage of an improper legal standard had already been applied to the plaintiff's case, as well as the unfair fact-finding process that supposedly "revealed a history and definite pattern of inappropriate behavior, violations of regulations and potential crimes committed by the plaintiff."  Moreover, this information was used by commander and supervisors alike to warn potential defense witnesses away from the trial and the plaintiff by suggesting and then taking illegal action to show that the plaintiff was a bad character."

The defendant's unreasonable conduct displays that regardless of whether the defendant was a state or federal agency, the defendant's various and separate intentional/willful negligent acts, along with the plethora of third parties who conspired and concurred to cause a single injury, concurrently combine to proximately cause the plaintiff's injuries, which the plaintiff asserts was based on the disclosure.  The defendant's egregious acts of UCI throughout the plaintiff's case clearly put in view its intentional/willful intent as exhibited in TAB Bs evidence attachments 6 and 7, the defendant maliciously used against the plaintiff libelous and false official statements in an ongoing legal proceeding, based on a public disclosure of private facts.  The dissemination of truthful private information which a reasonable person would find objectionable was not simply used for the probative value of the evidence, but was used to injure the

plaintiff and, by so doing, resulted in unfair prejudice, MRE 403, which actually caused exceptional circumstances that are so fundamentally defective as to result in a miscarriage of justice." Albeit, military decisions which cause clear violations of constitutional rights "beyond the bounds of human decency" have been protected under Feres, due to sovereign immunity as the defendant so claims, however, sovereign immunity does not apply under 5 U.S.C. 552.

**(b)** Second, whether it was the proximate (or legal) cause thereof. The plaintiff asserts that he has proven through the burden of production that the defendant was aware of its due care responsibilities. Although the defendant cites 5 U.S.C. 502a(b)(1) as intra-agency release, as argued earlier, such a claim would not be warranted since such a release would clearly not be permitted under the Privacy and FOIAs or by military regulation. The plaintiff alleged this in his FOIA Complaint on page 14 – 15 under the Argument for Summary Judgment section "the defendant used straight propensity evidence advanced under a logical theory of relevance, as they requested and obtained access to a record described in 5 U.S.C. 552 subsection (b)(7)(A), in addition to, (A) the investigation or proceeding involves a possible violation of criminal law; and (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings. Thus, the defendant clearly interfered with enforcement proceedings, and violated the mandated laws set forth in 5 U.S.C. 552. Additionally, the defendant proves by its own actions that it was aware that

they had due care for the administrative, supervisory, and subsequent monitoring responsibilities of the plaintiff's record pursuant to 5 U.S.C. 552, by providing Privacy Act Statements for every witness called during the AR 15 – 6 investigation as exampled in evidence attachment 14 – 17." "Based on the sworn statements submitted by William Luce, and Frank Veith in evidence attachments 6 and 7 during the AR 15 – 6 investigation, provides proof that the defendant disclosed the existence of the record to the public, which substantially interfered with enforcement proceedings. Moreover, this is prohibited by MRE 404(b) under a legal theory of relevance because admission would create significant risk that the members would convict the accused based upon a propensity theory and disregard the standard and elements required for proof beyond a reasonable doubt on the charged offenses.

The plaintiff's military ROT, its allied paper work, in addition to, TAB B clearly shows how the defendant requested the defective record in question to be sent to KAF, in an attempt to utilize the information in it against the plaintiff, once received the DA submitted the defective record against the plaintiff into evidence on November 14, 2006. This record was defective because it was inaccurate, non-relevant, untimely, and incomplete as stated in the plaintiff's complaint. However, as aforementioned the logic theory that the plaintiff attempted to keep out of the courtroom had already manifested prior to his investigation based on the disclosure of this information. Therefore, despite the plaintiff's best intentions to suppress this information in court, the damage of this disclosure was only in theory "suppressed." The plaintiff clearly proves that even upon multiple

requests the defendant refused to "purge" this information from his record in order to prevent the adverse action imposed upon him. Additionally, the taint and damages contained in the DA's system of records pertaining to the plaintiff's GCM continue to adversely impact him to this day.

The plaintiff displayed some of the damage of this "un-purged" taint in his original complaint starting on page 85 when he asserted "the unfairness of the fact-finding procedure by LTC Thomas and how the plaintiffs command even went as far as to repeatedly violate his right to privacy, which is protected by a privacy statue. Such violations are clearly shown in the sworn statements of two of the witnesses during the AR 15 – 6 Investigation conducted by LTC Thomas. First, on 4 AUG 2006, at 1730 local time MAJ Frank L. Veith Jr statement shows how the case was the topic of conversation by not only the primary staff at that time, but by others directly under the command of COL Williams. MAJ Veith states that he "wants to cite an action that was pointed out to me by MAJ Bill Luce." He then goes on to say "I was informed that the plaintiff personally" did an accusation and that such accusation "can be verified by MAJ Rob Barr the NCE S-1." This shows the command utilized "teamwork" in ensuring that each person received the same slanderous disclosure from a defective record in the defendant's possession, which the defendant utilized as vicious libelous statements in order to present the plaintiff as a bad character to public, the witness pool, and the fact-finder. This disclosed information was then utilized by the IO as unconfirmed truths in assisting him in conducting an unfair fact finding procedure, which resulted in an improper legal standard, which produced an

35

adverse determination against the plaintiff.  Thus, the defendant's utilization of disclosed information led to the aggregation of legally and factually unsupportable charges, which denied the plaintiff the due process even as to the valid charges.  In doing so, the defendant allowed the mere allegation of baseless charges to influence not only the fact finder by suggesting that the accused is a bad character, but the entire witness pool in the plaintiffs case that extended even beyond the plaintiffs rear detachment to the public as well doing an ongoing investigation.

Fraud on the Court had a substantial contributing effect on the findings of guilty and the sentence.  Therefore, as aforementioned by the plaintiff on page 108 of his original complaint as exampled by Haynes v. Washington, 373 U.S. 503, 516 – 518 (1963); and in Rogers v. Richmond, 365 U.S. 534, 547 (1961) "Historical facts 'found in the perspective framed by an erroneous legal standard can not plausibly be expected to furnish the basis for correct conclusions if and merely because a correct standard is later applied to them."

This coupled with the fact that the IO and COL Williams collectively did not give the plaintiff a chance to defend himself from these statements that were used with malicious intent and with disregard to the public's best interest at that time in order to falsely imprison, and wrongfully dismiss the plaintiff from the U.S. Army, severely damaged the military and civilian career prospects, of the plaintiff while causing his family personal and professional mental distress; embarrassment; and humiliation based on the defendant's disclosure.

The plaintiff emphasizes that he did in fact prove that the accusations made by many of the defendant's witnesses who stated he had "personally shopped" for woman to put on the deployment roster was false, and sustained based on the testimony of several of the so-called "victims" in the plaintiff's case who said the statements were untrue, as well as a witness in the plaintiff's rear command. However, the damage was already done as an improper legal standard had already been applied to the plaintiffs case, as well as an unfair fact-finding process that supposedly "revealed a history" (which the plaintiff asserts means the past and not current allegations as the defendant claims) "and definite pattern of inappropriate behavior, violations of regulations and potential crimes committed by the plaintiff" based on a total of "33 command influenced interviews, numerous official sworn statements that were false, and an AR 15 − 6 executive summary that is full of liable that creates fraud on the court. All of the defendant's negligence was taken and submitted into evidence and is used to support in depth the bases for the _Gamble_ case, along with the personnel who did such egregious acts as the foundation of the defendant's "victims and witnesses" pool. Therefore, it certainly appears that the plaintiff would not have been injured but for the concurrence, hence, both defendant and the third parties are actual causes. Moreover, the DMVA shares in Concurrent liability with the DA as one of its agencies and therefore, can not be immune to it's illegal actions in violation of 5 U.S.C. 552. Wherefore, the plaintiff asserts, alleges, and offers as opposing points and authorities IAW LCvR 7(b), which indicates that the

plaintiff pursuant to FRCP 12(b)(6), undeniably meet his burden of stating a claim upon which relief can be granted by a preponderance of the evidence.

## IV. **ARGUMENT**

### A. **Disclosure of Information From Alaska to Plaintiff's Command:**

The plaintiff asserts that he has proven through the burden of persuasion and the burden of production that a defective record proximately caused an adverse determination concerning him. Furthermore, the plaintiff has meet his burden in order to obtain relief under the Privacy Act by establishing how an agency violated a provision of the Act, the violation of the Act was "intentional or willful," and this action had an adverse effect on the plaintiff.

By the defendant's own acknowledgement, the NG "occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns,"[15] thus, this Court can not simply take a narrow view on this matter based on that scope, and allow the defendant to subject the plaintiff to military law in order to falsely imprison him, and then not apply that same expansion on all liable parties, by allowing the defendant to claim immunity after the burden of production submitted to this Honorable Court by the plaintiff in TAB B clearly shows how the defendant's negligent actions exceeded gross error, and was nothing short of an intentional, reckless, malicious, and tortuous pattern of management" as part of a pattern of retaliation performed by the plaintiff's command by the disclosure of information which violated 5 U.S.C. 552.

--------------------

15  Knutson v. Wisconsin Air National Guard, 995 F.2d 765, 767 (7th Cir. 1993)

The plaintiff's Complaints and allied paperwork prove that once the DMVA willfully disclosed his record to the DA at KAF without his consent, they violated 5 U.S.C. 552, and they actually and concurrently caused injuries to the plaintiff and waived their right to any sovereignty guaranteed under the Eleventh Amendment by acting as a federal agency under the DA, and by being the custodian of a record contained in a system of records which was disclosed, hence having established general records management requirements for Federal agencies under the Privacy Act.  Thus, the plaintiff has proven a violation of the Privacy Act, by showing how an agency subject to the Privacy Act made an improper disclosure.

As aforementioned the DMVA is not strictly a State entity, but is also a Federal entity codified in the U.S. Constitution with Federal Statues that governs it under U.S.C.'s 10 and 32.  Therefore, when the DMVA acts negligently under a federal statue it can not then claim state immunity, nor when it willfully involves itself in a Federal or Military Trial through willful negligent acts which are subject to collateral review by this Honorable Court, can it then seek State immunity when it's actions violate Federal Law, in addition to being the actual cause of the damages claimed in a lawsuit, in which they are concurrently liable.

The DMVA disclosed any record maintained in a system of records to its personnel, and to DA personnel who maliciously used it against the plaintiff with false official statements, in addition to, providing the public with "rumors" before, during, and after an ongoing legal federal procedure that led to several adverse actions against the plaintiff culminating with his GCM conviction.  Finally, the

39

evidence clearly shows the willingness by the defendant to be included in the plaintiff's GCM, which is reviewable by this Honorable Court, which the plaintiff asserts waives their Eleventh Amendment immunity.  Regardless of any immunity the defendant cites, IAW 5 U.S.C. 552 this Honorable Court still has jurisdiction in this Civil Case based on the fact that the defendant has a system of records which even to this day they continue to maintain an incomplete record on the plaintiff in violation of 5 U.S.C. 552.

### B. Disclosure of Information From Plaintiff's Command:

The defendant calls its actions, in addition to, statements made by the plaintiff's commander to be merely the "plaintiff's legal conclusion that these statements violate the Privacy Act, and fail to meet Twombly, 127 S. Ct. at 1964, and allege elements necessary to state a claim for which relief can be granted." However, the "plaintiff's legal conclusion's" are substantiated by affidavits, sworn statements, and court documented evidence from the plaintiff's GCM case, in which the defendant's very own military courts hastily affirmed were true according to law and facts.  Moreover, as cited in the plaintiff's original complaint on page 47 under A Defective Record Proximately Caused an Adverse Determination section that "based on COL Williams being an accuser as well, a reasonable person would harbor a doubt about the COL's impartiality based on the evidence of record and actions taken by the COL himself" e.g. having probable cause to influence the fact-finder to prefer charges based upon incompetent, inadmissible, or even illegally obtained evidence, "and others subsequent to the COL's Statements" Clarke v. Brackenridge, (C.M.R. LEXIS 10,

1991), who assisted in creating an atmosphere of terror and vengeance not conducive to a fair decision by improperly preferring charges from an AR 15 – 6 Investigation that clearly lacked a fair fact finding procedure as in <u>Haynes v. Washington</u>, and <u>Rogers v. Richmond</u>.

   This conduct displays negligent acts by the DA and a failure in it's due care responsibilities owed to the plaintiff.  Moreover, in the plaintiff's original complaint on pages 78 – 79 the plaintiff cited <u>U.S. v. Black</u>, 40 M.J. 615 (C.M.R. LEXIS 188, 1994), to show how his commander's actions forged alliances between the prosecution, the Commander, and the material witnesses throughout the Plaintiffs case, and did not maintain the required delicate balance between military justice and command discipline.  As in the <u>U.S. v. Black</u> case the Plaintiffs Commander and most of the witnesses were also the officers and NCOs who convened the Plaintiffs investigation, therefore, the record should leave this Honorable court with a reasonable doubt of any disclosure made at that time to the public reference the plaintiffs command.  Additionally, as cited in the plaintiffs original complaint on pages 33 - 35 in <u>U.S. v. Allen</u>, the court listed six factors that the military courts have considered in deciding whether a commander's contacts were impermissible:  the timing of the contact; who made the contact; the type of contact; the content of the contact; who was contacted; and the reasonable likelihood that the accused was prejudiced at trial.  This taken with the plaintiffs burden of production against the DA points a clear picture of how his command utilized an intentional, reckless, malicious, and tortuous pattern of management" as part of a pattern of retaliation, when they improperly

preferred charges based on incompetent, inadmissible, and illegally obtained evidence, before, during, and after his GCM conviction.

### C. Granting the plaintiff's Writ of Habeas Corpus:

Indeed the defendant appears to focus their argument on what it calls "unnecessary inclusion of allegations" since their egregious actions undoubtedly tainted the plaintiff's GCM proceeding, the resulting AR 15 – 6 Investigation, and the actions taken as a result of that investigation based upon the defendant's intentional/willful actions before, during, and after that trial. Moreover, the defendant's illegal actions have been upheld and allowed by the military courts, and to this day remain "un-purged" in the plaintiffs case, and taken as truth despite the defendant's inability to provide the plaintiff with a fair trial during any time period based on its lack of jurisdiction over every potential witnesses who intentionally violated the Privacy and FOIAs, nor can it or has it ever proved beyond a reasonable doubt every charged offense against the plaintiff.

The defendant claims that this Honorable court does not have jurisdiction over the plaintiff's complaint, although this Honorable Court as argued by the plaintiff has Federal Question, Supplemental, Collateral Review, Privacy Act and the FOIA jurisdiction and authority in this case over all liable parties.

Throughout the plaintiff's GCM the defendant has maintained that it had jurisdiction and was protecting the plaintiff's basic Constitutional rights essential to a fair trial, and they guaranteed his due process of law. However, that is impossible based on the Nature of CM Jurisdiction which can only consider

disciplinary, or penal cases.[16] Yet, somehow the defendant asserts that this Court lacks jurisdiction, yet contends at the same time that it did not lack jurisdiction, and that it indeed afforded the plaintiff a fair trial, despite all of the concurrently liable parties who actually caused the plaintiff's injuries through negligence that are not in the defendant's jurisdictional sphere.

The military courts may only try criminal cases and adjudge only criminal sentence.[17] They have no authority to adjudge civil remedies such as the payment of damages or the collection of private debts,[18] or cases such as the plaintiff's who's violations can only be addressed through civil remedies. Furthermore, the Courts, in referring to the nature of the CM, often label it as a "creature of statute,"[19] a phrase that sets the appropriate tone for any discussion of CM jurisdiction.  Practitioners working within the system of military justice must be ever cognizant that, only after a variety of jurisdictional prerequisites have been satisfied, may a CM properly hear a case and render a valid judgment.  The opportunities for jurisdictional defects are many, and the effect of any such defect is the same:  the CM is void.

In the plaintiff's Writ of Habeas Corpus to the Army Criminal Court of Appeals (ACCA) to Dismiss all Charges and Specifications and seek Relief from Damages caused by an Improper Legal Standard, dated July 1, 2007.[20] In the Defendant's Answer in Opposition to the Petition for Extraordinary Relief in the

---

16  See R.C.M. 201(a)(1)
17  R.C.M. 201(a)
18  R.C.M. 201(a)(1)
19  McClaughry v. Deming, 186 U.S. 49 (1902)
20  See evidence attachment 1 of TAB C

Nature of a Writ of Habeas Corpus, served on ACCA October 25, 2007,[21] and

ACCA's Order, dated November 13, 2007, denying consideration of the plaintiff's

petition,[22] clearly establishes how the plaintiff has by the burden of production in

TABs A, B, and C proved that the defendant acted without jurisdiction, that there

was a substantial violation of the plaintiff's constitutional rights, and that

exceptional circumstances exist which are so fundamentally defective as to result

in the miscarriage of justice.

### D.  Motion for Summary Judgment:

The motions filed by the defendant sought to test the legal sufficiency of the

plaintiff's claims in his original complaint, in which the plaintiff proved his claim by

the burden of persuasion and the burden of production.  Additionally, all

allegations of material facts in the plaintiffs complaints are taken as true and

construed in the light most favorable to the nonmoving party.  However, the Court

is not required to accept legal conclusions cast in the form of factual allegations if

those conclusions cannot reasonably be drawn from the facts alleged.

Therefore, the plaintiff in his Motion for Summary Judgment had to show that

there is no "genuine issue of material fact" in the lawsuit, and that he is "entitled

to judgment as a matter of law."

The plaintiff now further asserts that this Honorable Court should conclude

that the plaintiff has shown that there is no "genuine issue of material facts" in the

lawsuits, thus, granting for the plaintiff in his Motion for Summary Judgment, as

---

21  See Evidence Attachment 2 of TAB C
22  See Evidence Attachment 3 of TAB C

the plaintiff asserts that he has clearly and substantially met his burden of proof in this case through the production of legal and factual evidence, and has undoubtedly shown that he is entitled to a summary judgment with the presumption directed against the defendant.  The defendant bore the initial burden of producing an adequate rebuttal of non-presumed evidence.  However, the defendant did not produce any non-presumed evidence in their rebuttal, hence, by law they should suffer a summary judgment.  Thus, the plaintiff is "entitled to judgment as a matter of law," and should win this case without going to trial.

## VI. **CONCLUSION**

In support of this motion, the plaintiff respectfully submitted points and authorities in opposition to the defendant's claims, a statement of material facts not in genuine dispute, and attached various proposed orders to be rendered by this Honorable Court.  Hence, for reasons stated within this motion and therein the plaintiff's Complaints and allied paperwork, this Honorable Court should deny the defendant's motion to dismiss, or in the alternative, motion for a more definite statement.

*Fredrick M. Gamble*

FREDRICK M. GAMBLE
Plaintiff
Regional Confinement Facility
1490 Randolph Road
Fort Sill, OK 73503-5305
Phone Number: (580) 442 - 4313
ATTN: Mrs. RaShonda Labrador

## UNITIED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FREDRICK M. GAMBLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-0207 (ESH)** |
| | ) | |
| **DEPARTMENT OF THE ARMY, AND** | ) | |
| **ALASKA DEPARTMENT OF MILITARY** | ) | |
| **AND VETERANS AFFAIRS** | ) | |
| | ) | |
| **Defendant,** | ) | |
| _____ | ) | |

## ORDER

Upon consideration of the Memorandum in Support of Plaintiff's Response in Opposition to the Department of the Army's Motion to Dismiss, or in the alternative for a More Definite Statement, and the opposition thereto, and the Court having considered the entire record herein, it is, this _____ day of _____, 2008,

ORDERED that Defendant's motion is DENIED, and it is further

ORDERED that judgment shall be entered for Plaintiff, and that the Defendant has 10 days from this order to either continue the action in the trial Court by answering, or allow a default judgment to be entered against them and then appeal the decision on the 12(b)(6) motion. The defendant may not appeal without taking the default judgment, because the denial of their motion is not a "final judgment" under 28 U.S.C. 1291.

Dated this _____ day of _____, 2008.

_____
Ellen S. Huvelle
United States District Judge

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREDRICK M. GAMBLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0207 (ESH) |
| | ) | |
| DEPARTMENT OF THE ARMY, AND | ) | |
| ALASKA DEPARTMENT OF MILITARY | ) | |
| AND VETERANS AFFAIRS | ) | |
| | ) | |
| Defendant, | ) | |

## ORDER

Upon consideration of the Plaintiff's Motion for Summary Judgment, and the opposition thereto, and the Court having considered the entire record herein, it is, this _____ day of _____, 2008,

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED, and it is further

ORDERED that judgment shall be entered for Plaintiff, and all relief cited in his Memorandum in Support of Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss, or in the alternative for a More Definite Statement is Granted.

This is a final, appealable order.

Dated this _____ day of _____, 2008.


_____
Ellen S. Huvelle
United States District Judge

1

**UNITIED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FREDRICK M. GAMBLE                              )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )        Civil Action No. 08-0207 (ESH)
                                                )
DEPARTMENT OF THE ARMY, AND                     )
ALASKA DEPARTMENT OF MILITARY                   )
AND VETERANS AFFAIRS                            )
                                                )
                    Defendant,                  )
_____         )

## ORDER

Upon consideration of the Plaintiff's Writ of Habeas Corpus, and the

opposition thereto, and the Court having considered the entire record herein, it is,

this _____ day of _____, 2008,

ORDERED that Plaintiff's petition is GRANTED, and it is further

ORDERED that judgment shall be entered for Plaintiff, and that the

plaintiff shall be released immediately from incarceration without having to deal

with any adverse actions adjudged to him by his General Court-Martial (GCM)

sentence as he awaits the final actions to be taken by this Honorable Court.

Dated this _____ day of _____, 2008.


_____
Ellen S. Huvelle
United States District Judge

1

# UNITIED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREDRICK M. GAMBLE                          )
                                            )
            Plaintiff,                      )
                                            )
    v.                                      )        Civil Action No. 08-0207 (ESH)
                                            )
DEPARTMENT OF THE ARMY, AND                 )
ALASKA DEPARTMENT OF MILITARY)
AND VETERANS AFFAIRS                        )
                                            )
            Defendant,                      )
_____)

## ORDER

Upon consideration of the Plaintiff's Writ of Habeas Corpus, and the

opposition thereto, and the Court having considered the entire record herein, it is,

this _____ day of _____, 2008,

ORDERED that Plaintiff's petition to Reverse his General Court-Martial

Conviction (GCM) is GRANTED, and it is further

ORDERED that judgment shall be entered for Plaintiff, and all relief cited

in his Memorandum in Support of Plaintiff's Response in Opposition to the

Defendant's Motion to Dismiss, or in the alternative for a More Definite Statement

Section III subsection 2a(3)(c), (d), (e), and (f) are Granted.

Dated this _____ day of _____, 2008.


                                    _____
                                    Ellen S. Huvelle
                                    United States District Judge

1