UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FREDERICK M. GAMBLE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-207 (ESH) |
| ) | |
| DEPARTMENT OF THE ARMY, ) | |
| ALASKA DEPARTMENT OF MILITARY ) | |
| AND VETERANS AFFAIRS, ALASKA ) | |
| ARMY NATIONAL GUARD, and the ) | |
| ALASKA NATIONAL GUARD YOUTH ) | |
| CORPS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff has sued defendants for alleged violations of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a. In a Memorandum Opinion dated June 4, 2008, the Court granted a motion to dismiss with respect to the State of Alaska defendants (the Alaska Department of Military and Veterans Affairs, Alaska Army National Guard, and the Alaska National Guard Youth Corps). *See Gamble v. Dep't of the Army*, No. 08-cv-207(ESH), 2008 WL 2278337, at *1 (D.D.C. June 4, 2008). Plaintiff has now moved to amend his complaint to include claims based on the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and he also asks the Court to reconsider its Memorandum Opinion. Because the Court's Memorandum Opinion was based in part on an error, the Court grants plaintiff's motion for reconsideration and vacates its prior Memorandum Opinion. The Court also grants plaintiff's motion to amend and it will consider his FOIA claims. However, because the Court ultimately concludes that plaintiff has no viable claim against any defendant, it will grant defendants' motions to dismiss and deny plaintiff's

motion for summary judgment.

## BACKGROUND

I.   **FACTUAL BACKGROUND**

Plaintiff joined the Alaska Army National Guard as a part-time member in 1992. (Orig. Compl. at 3.)[1] In 1994, he was serving as a Team Leader in the Alaska National Guard Youth Corps when he was fired after being accused of some unspecified improprieties. (*Id*.) However, plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), and he was ultimately reinstated to his position. (*Id*.) According to plaintiff, the Chief of Staff of the Alaska Army National Guard told him that a file containing information about these allegations would be destroyed by the Alaska Army National Guard (and by extension the Alaska National Guard Youth Corps) as long as plaintiff was not involved in any further incidents for at least one year. (*Id.*) Plaintiff left the Alaska National Guard Youth Corps later in 1994, but he maintained his ties to the Alaska Army National Guard and became a full-time participant in 1997. (*Id*.)

In 2006, plaintiff's guard unit was stationed in Afghanistan. (*Id*. at 2.) During this tour of duty plaintiff was accused of sexual misconduct, including allegations by his own subordinates, and the Army investigated the charges under Regulation 15-6. (*Id*. at 1-2, 19-20.) During the investigation, plaintiff claims that his commanding officer, Col. R. Stephen Williams, told him that "he had heard the plaintiff did similar things like this in the past." (*Id*. at 20.) According to plaintiff, Col. Williams also said that the Alaska National Guard Youth Corps was sending a file detailing the 1994 investigation to the Alaska Army National Guard, which would

---

[1]Plaintiff's original complaint, filed Feb. 5, 2008 [hereinafter "Orig. Compl."].

then provide it to Col. Williams. (*Id.*) Upon receiving the file, Col. Williams allegedly turned it over to Lt. Col. Thomas, the officer overseeing the Regulation 15-6 investigation.[2] (*Id.*) Plaintiff offered his resignation in lieu of a court-martial (*Id.*, Attach. 13), but the Army refused his offer. (*Id.* at 5.) During the court-martial proceedings, a military judge suppressed information from the 1994 incident. (*Id.* at 4.) However, according to plaintiff, Col. Williams disclosed information about the 1994 incident to those in his command at various "town hall meetings." (*Id.* at 59-60.) Additionally, several military officers testified about plaintiff's disciplinary history, with one witness allegedly saying that "he knew of a sexual harassment investigation back in Alaska." (*Id.* at 85-88.) Plaintiff was convicted[3] and sentenced to confinement for two years, forfeiture of pay, and dismissal from the service. (*Id.*, Attach. 4.) Plaintiff is currently serving his sentence at a military facility in Oklahoma. (*Id.* at 1.)

## II.    PROCEDURAL HISTORY

After pursuing various appeals in the military courts, plaintiff filed a *pro se* complaint[4] on February 5, 2008. The complaint, which is a rambling 124-page document with 103 pages of attachments, is difficult to follow and contains extraneous information about his court-martial proceedings. However, plaintiff's basic argument appears to be that the Alaska Army National

---

[2] It is unclear from plaintiff's pleadings whether Col. Williams and Lt. Col. Thomas were also part of the Alaska National Guard or whether they were in the U.S. Army. As explained below, resolution of this issue is of no relevance.

[3] According to Department of Defense records, plaintiff was charged with seven counts. He pled guilty to five of the seven counts, he was convicted of one count, and as to the last count, he pled to a lesser included offense. (*Id.*, Attach. 4.)

[4] The Court recognizes that "plaintiff is subject to a liberal pleading standard because he is proceeding *pro se*." *Clemmons v. U.S. Dep't of Justice*, No. 06-cv-305 (RCL), 2007 WL 1020796, at *7 (D.D.C. Mar. 30, 2007).

Guard and the Alaska National Guard Youth Corps have maintained a "secret file" containing false information about the 1994 allegations against him, and that defendants' improper use of this information resulted in his conviction. (*Id*. at 3-4.) Specifically, plaintiff contends that defendants disclosed information in violation of the Privacy Act, 5 U.S.C. § 552a(b), and that they failed to maintain his personal information in accordance with § 552a(g)(1)(C).[5] (Pl.'s Supp. at 2.)[6]

On April 25, 2008, plaintiff filed a summary judgment motion where for the first time he raised issues under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. Defendants filed separate motions to dismiss claiming a lack of subject matter jurisdiction and a failure to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(1), (6). On June 4, 2008, this Court issued a Memorandum Opinion and Order dismissing plaintiff's claims against the State defendants. There were two bases for the Court's Memorandum Opinion: 1) to the extent the Alaska defendants were acting as state agencies, plaintiff's claims against them are barred by the Eleventh Amendment; and 2) to the extent that they were acting in federal capacities, plaintiff's claims are barred by the *Feres* doctrine. *See Gamble*, 2008 WL 2278337, at \*1. Having concluded that plaintiff's claims fail regardless of whether the Alaska defendants

---

[5]Plaintiff also attempts to collaterally attack his conviction. *See* Plaintiff's Answer in Opposition to the Motion and Memorandum in Support of Motion to Dismiss, filed May 12, 2008 [hereinafter "Pl.'s Opp'n"], Exh. 1. However, as long as the court-martial had proper jurisdiction over plaintiff, this Court cannot review its decisions. *See Hiatt v. Brown*, 339 U.S. 103, 111 (1950) ("It is well settled that by habeas corpus the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial. The single inquiry . . . is jurisdiction.") (internal citation omitted).

[6]Plaintiff's Supplement to Petition for Grant of Review, filed with the Original Complaint [hereinafter, "Pl.'s Supp."].

are characterized as state or federal entities, the Court dismissed the claims against these defendants, and the only defendant still remaining was the Department of the Army.

In a motion dated June 11, 2008, plaintiff moved to amend his complaint to include claims under FOIA, and he asked the Court to reconsider its Memorandum Opinion and Order. Also before the Court are the Department of the Army's motion to dismiss and plaintiff's motion for summary judgment. As explained herein, the Court will reconsider its prior Memorandum Opinion and will vacate it, it will permit plaintiff to assert claims under FOIA, but for the reasons set forth herein, it will dismiss all claims against all defendants.

## ANALYSIS

### I. ALASKA DEFENDANTS OPERATING AS STATE AGENCIES

The Alaska defendants cannot be sued for their state-related activities under the Privacy Act or FOIA for two reasons. First, both statutes are limited to entities deriving their authority from the federal government. *See* 5 U.S.C. § 551(1). *See also Brown v. Kelly*, No. 93-5222, 1994 WL 36144, at *1 (D.C. Cir. Jan. 27, 1994) ("Freedom of Information Act and Privacy Act do not apply to state agencies") (internal citation omitted).

Second, plaintiff's claims relating to the Alaska defendants' state-related activities are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). Therefore, the Eleventh Amendment protects the Alaska defendants' state-related activities unless Congress abrogated state sovereign immunity or Alaska waived its immunity.

Neither abrogation nor waiver has occurred in this case. Abrogation requires an "unequivocal expression of congressional intent." *Pennhurst*, 465 U.S. at 99. Courts have

already determined that neither the Privacy Act nor FOIA manifest any such intent. *See, e.g.*, *Lawson v. Shelby County*, 211 F.3d 331, 335 (6th Cir. 2000) ("Congress never expressly abrogated state sovereign immunity under the Privacy Act."); *Proctor v. Higher Educ. Assistance Found.*, No. 2:07-cv-839, 2008 WL 2390790, at *4 (S.D. Ohio June 9, 2008) (with respect to FOIA, "there would be no reason for Congress to attempt to abrogate Eleventh Amendment immunity"). Likewise, waiver requires either "the most express language" or "overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotations and citations omitted).

In response, plaintiff argues that Alaska waived its sovereign immunity when it "willfully participated as a federal agency" in his court-martial. (Pl.'s Opp'n 11.) However, a state's cooperation in a federal proceeding does not constitute a waiver of its sovereign immunity. *See Edelman*, 415 U.S. at 673. Therefore, plaintiff's claims against the Alaska defendants are not viable to the extent that such claims are based on state-related activities.

## II.     THE ARMY AND THE ALASKA DEFENDANTS' FEDERAL ACTIVITIES

Although plaintiff cannot sue the Alaska defendants for incidents relating to their state activities, he can sue the Department of the Army, which is a federal entity, and arguably, he can sue the Alaska Army National Guard when it is engaged in federal activities.[7]

---

[7]"The Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns. In each state the National Guard is a state agency, under state authority and control. At the same time, federal law accounts, to a significant extent, for the composition and function of the Guard. Accordingly, the Guard may serve the state in times of civil strife within its borders while also being available for federal service during national emergencies." *Knutson v. Wis. Air Nat'l Guard*, 995 F.2d 765, 767 (7th Cir. 1993).

The Alaska Army National Guard is a state agency under the control of the governor when it is not on active duty. *See* ALASKA STAT. § 26.05.060. However, when the Alaska Army National Guard is activated, it becomes part of the Department of the Army. *See* 10 U.S.C. § 10106. Accordingly, plaintiff's claims against the Alaska Army National Guard are limited to those times when it was on active duty. During the relevant period in this case, plaintiff's guard unit was in Afghanistan (Orig. Compl. at 1-5), so arguably the Alaska Army National Guard was part of the Department of the Army at this time.[8] Therefore, the only entities that could possibly be subject to suit are the Department of the Army and the Alaska Army National Guard.

    A.    *Privacy Act Claim*[9]

Plaintiff alleges that defendants disclosed the contents of a secret file containing information about his 1994 incident in the Youth Corps in violation of 5 U.S.C. § 552a(b), which provides that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record

---

[8] The remaining State defendants, the Alaska Department of Military and Veterans Affairs and the Alaska National Guard Youth Corps, are pure state agencies. While the Department of Military and Veterans Affairs oversees the various national guard units, this is a bureaucratic function that does not alter its state characteristics. Likewise, the Youth Corps is a program for at-risk youth who are never deployed on active duty.

[9] In the Court's Memorandum Opinion dated June 4, 2008, it ruled that plaintiff's Privacy Act claims are barred by the *Feres* doctrine. *See Gamble*, 2008 WL 2278337, at *1. This ruling was in error, as it contravened Circuit precedent. *See Cummings v. Dep't of the Navy*, 279 F.3d 1051, 1058 (D.C. Cir. 2002) ("we hold that the doctrine of *Feres v. United States* does not extend to Privacy Act lawsuits brought by military personnel against the military departments"). The Court will therefore vacate this Memorandum Opinion.

> pertains, unless disclosure of the record would [fall under one of
> the enumerated exceptions].

*Id.*  Plaintiff is entitled to civil remedies under § 552a(b) only if the violation had an "adverse effect" on him.  5 U.S.C. § 552a(g)(1)(D).  Plaintiff bases his § 552a(b) claim on two different disclosures.  First, he alleges that the Youth Corps sent the secret file to the Alaska Army National Guard, which then sent it to his commanding officer, Col. Williams.  (Orig. Compl. at 20.)  Second, plaintiff maintains that Col. Williams also disclosed the information to unauthorized individuals under his command.  (*Id.* at 59-60, 85.)

Plaintiff's Privacy Act claim fails because he has not asserted actual damages from an adverse effect caused by the alleged violations.  Plaintiff argues that his court-martial and subsequent conviction created emotional and financial injuries.  (Pl.'s Supp. at 2-3.)  However, information from the alleged "secret file" did not affect the military proceedings because, as plaintiff acknowledges, this information had been suppressed by the military judge.  (Orig. Compl. at 4.)

Even if the disclosures had some effect on the court-martial proceedings, this does not constitute an adverse effect because plaintiff has acknowledged the misconduct charged in the court-martial.  *See* note 3, *supra*.  A plaintiff cannot prevail under the Privacy Act when his own misconduct is an independent cause of the disciplinary action against him.  *See e.g.*, *Mandel v. U.S. Office of Pers. Mgmt.*, No. 03-6046, 2003 WL 22469719, at *2 (2d Cir. Oct. 31, 2003) ("[Plaintiff] has offered no evidence to show that the affirmance of his unsuitability determination, and its attendant effects, were caused by OPM's disclosure or the witnesses' testimony.  Indeed, as stated in the unsuitability determination and the administrative decision affirming it, [plaintiff's] falsifications and omissions in his application for federal employment

were, independently, sufficient to find him unsuitable for federal employment.").

Given that plaintiff's conviction was not caused by the information in the alleged "secret file," any injuries stemming from the conviction are not actionable, and all that could remain is his speculative claim of emotional distress allegedly caused by others talking about his past. (*Id.* at 59-60, 84-87.) However, while gossip may cause an adverse effect, it does not constitute actual damages. *See Doe v. Chao*, 540 U.S. 614, 620-25 (2004) (holding that emotional anguish alone is insufficient, and that a plaintiff must show actual damages to recover under the Privacy Act). Therefore, plaintiff's Privacy Act claim cannot survive because of the lack of any adverse effect, as well as the lack of actual damages.

Even if plaintiff could show an adverse effect or actual damages, his Privacy Act claim would still be deficient. First, any disclosure to Col. Williams falls within the "need-to-know" exception, which permits disclosure to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). As commanding officer of plaintiff's unit, Col. Williams had a right to obtain this information. In 2006, plaintiff faced serious charges of sexual misconduct, including allegations of sexual harassment involving his subordinates. (Orig. Compl., Attach. 4.) Given the debilitating effect that such behavior can have in a military setting, Col. Williams had a legitimate reason to access plaintiff's disciplinary record. *See Bigelow v. Dep't of Defense*, 217 F.3d 875, 877 (D.C. Cir. 2000) (in a § 552a(b)(1) inquiry, the question is whether "the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly")*; Cacho v. Cherthoff*, No. 06-cv-292 (ESH), 2006 WL 3422548, at *6 (D.D.C. Nov. 28, 2006) (finding a need-to-know under §

552a(b)(1) when two high-ranking military officers "were responsible for ensuring that the air station was operating safely" and "[t]hey had supervisory and disciplinary authority over plaintiff").[10]

Col. Williams' "need to know" extended to those assisting him with the investigation. For example, Lt. Col. Thomas had a right to the information because he was the lead investigator. (Orig. Compl. at 20.) Also, given the nature of the allegations, it would not have been improper for Col. Williams to disclose plaintiff's disciplinary history to his senior staff (*id.* at 60-61) so that they could assist with the investigation. *See, e.g.*, *Pippinger v. Rubin*, 129 F.3d 519, 530 (10th Cir. 1997) ("[A] supervisor conducting an investigation into bona fide allegations of employee misconduct must be allowed some latitude under the Privacy Act's "need to know" exception . . . .").

Second, plaintiff cannot infer a Privacy Act violation from the mere fact that some of his peers may have been aware of the 1994 incident. *See Pippinger*, 129 F.3d at 530-31 ("the mere fact that information contained in [plaintiff's] personnel files was well-known in his workplace does not give rise to an inference that such knowledge was widespread *because* of a disclosure from [plaintiff's] personnel files. . . . [The Privacy Act] does not prevent federal employees or officials from talking -- even gossiping -- about anything of which they have non-record-based knowledge.") (emphasis in original). Therefore, even if the 1994 incident was a "topic of

---

[10]Moreover, any disclosure from the Alaska Army National Guard to Col. Williams was a permissible intra-agency disclosure. *See Thompson v. Dep't of State*, 400 F.Supp.2d 1, 20 (D.D.C. 2005) (Section 552a(b)(1) of the Privacy Act "authorizes the intra-agency disclosure of a record for necessary, official purposes.").

conversation" (Orig. Compl. at 85), this is insufficient as a matter of law under the Privacy Act.[11]

    B.    *FOIA Claims*

Plaintiff's FOIA claims are based on a misinterpretation of the statute. He argues that defendants could not disclose his personal information because it fell within several of the FOIA exemptions. (Am. Compl. at 2-3.)[12] However, "Congress did not design the FOIA exemptions to be mandatory bars to disclosure. . . . Congress did not limit an agency's discretion to disclose information when it enacted the FOIA." *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979). *See also Tripp v. Dep't of Defense*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002) ("FOIA, as solely a disclosure statute, only provides a cause of action to compel disclosure, but not an action to prohibit disclosure."). Accordingly, plaintiff's FOIA claims do not state a cause of action.

---

[11]Col. Williams' alleged disclosures during town hall meetings cannot constitute Privacy Act violations. During these town hall meetings, Col. Williams talked about an anonymous "officer" facing misconduct charges; he never mentioned plaintiff's name. (Orig. Compl. at 60.) Col. Williams was speaking about the pending charges against plaintiff, not the 1994 incident allegedly contained in his "secret file." (*Id.*) Plaintiff argues that "[m]ost of the attendees knew Col. Williams was referring to [him] because [he] was not at the town hall meetings, the various references to the officer in question clearly indicated [him], and because there had been much discussion at all levels within the unit about [his] case." (*Id.*) However, even if all the attendees knew that Col. Williams was talking about plaintiff, it would not violate the Privacy Act because there is no basis for inferring that there was an improper disclosure of plaintiff's file. (*Id.*) *See Pippinger*, 129 F.3d at 531.

[12]Plaintiff's Amended Complaint, dated April 15, 2008 [hereinafter "Am. Compl."].

## CONCLUSION

Therefore, for the foregoing reasons, plaintiff has failed to state a claim upon which relief can be granted. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: July 23, 2008